LORIMER T. WEST & another *vs.* JOHN JACOBS & another.

Middlesex. October 8, 1931. — December 3, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Contract,* Of employment. *Corporation,* As successor to partnership, Rights of stockholders. *Partnership. Equity Jurisdiction,* To enforce negative agreement. *Equity Pleading and Practice,* Parties, Amendment.

Two partners engaged in an ice business in a town employed a driver from April to October in several years under a contract whereby he promised not to engage in the ice business in the town for five years after the termination of the employment. After the end of the period of employment in a certain year, the partners formed a corporation, to which they transferred the assets and good will of the ice business, excepting the contract with the driver. The partners became two of the three directors of the corporation and the owners of substantially its entire capital stock. As managers of the corporation, it was their intention to employ the driver again in the following spring. His wife thereafter, knowing of his employment but not of the contract, in good faith started another ice business with her own money. He entered her employ in the spring and solicited patronage on routes where he formerly had worked for the partners. In a suit in equity by the partners against him and his wife to enforce the contract, a final decree was entered dismissing the bill. On appeal by the plaintiffs, it was *held,* that

(1) By transferring their ice business to the corporation, the plaintiffs had rendered themselves incapable of employing their former driver and of performing the contract: he was not obliged to enter the employment of the corporation;

(2) The ownership of substantially all the capital stock of the corporation by the plaintiffs did not enable them to maintain the suit;

(3) A motion by the plaintiffs in this court, to amend the bill by designating the plaintiffs as having brought it in behalf of the corporation, was denied, since the corporation had no rights under the contract which it could have enforced in the suit if the amendment were permitted;

(4) The decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on April 28, 1931, and described in the opinion.

The prayers of the bill were as follows:

1. That the defendant John Jacobs be enjoined and restrained from soliciting business from, and from selling and delivering ice to, the public, either directly or indirectly, either personally or as an employee in any branch of the ice business within the cities of Malden, Melrose and Everett, Massachusetts, in which the defendant John Jacobs has worked for your complainants.

2. That the defendants John Jacobs and Emma L. Jacobs be enjoined and restrained from soliciting business from, and from selling or delivering ice to, the public through the aid, or by means, of representations or statements to the effect that the defendant John Jacobs is engaged in the ice business.

3. That the defendant Emma L. Jacobs be enjoined and restrained from employing the defendant John Jacobs in the ice business in the cities of Malden, Melrose and Everett, in which the defendant John Jacobs has worked for the plaintiffs.

4. That the defendant John Jacobs be enjoined and restrained from using the name "Standard Ice Company."

5. That the defendant Emma L. Jacobs be enjoined and restrained from using the name "Standard Ice Company."

7. That the plaintiffs be awarded damages for the injury done them by the defendants and each of them.

8. And for such other and further relief as may seem meet and proper in the premises.

The suit was referred to a master. He found that the contract with the defendant John Jacobs, upon which the plaintiffs relied, was dated April 23, 1927, and read as follows:

"Kelly and West hereby employs John Jacobs and he

agrees to faithfully perform any duties assigned to him. In consideration of the employment of the said employee by the employer and weekly compensation now or hereafter to be agreed upon mutually either verbally or in writing by both parties hereto, the said employee agrees that he will not for a period of (5) years after any termination of said employment engage directly or indirectly, either personally or as an employee in any branch of the ice business within any city or town in which said employee has worked for said employer or to their successor.

"If within one year of the termination or suspension of said employment said employee re-enters the employment of said employer such employment shall be on the same terms and conditions as herein contained, except as to rate of wages, to be agreed upon at time of re-employment."

The master further found: "The defendant John Jacobs was employed by the partnership at various times as a driver and a helper, and was furnished employment whenever the same was available, which, in general, began about April of each year and ended about October or early November. He terminated his employment with said partnership about the middle of October, 1930."

Other material facts found by the master appear in the opinion. By order of *Broadhurst*, J., there were entered an interlocutory decree confirming the master's report and a final decree dismissing the bill. The plaintiffs appealed. A motion by them in this court is described in the opinion.

*A. E. Lamb*, for the plaintiffs.

*E. J. Bushell*, for the defendants.

CROSBY, J.  This is a suit in equity brought to restrain the defendants from engaging in the ice business within any city or town in which the employee had worked for the plaintiffs or their successor, for a period of five years after any termination of said employment, and for the assessment of damages. A contract in writing dated April 23, 1927, is relied on by the plaintiffs, the parties thereto being the plaintiffs and the defendant John Jacobs. The case was referred to a master who found that the prayer for damages was waived by the plaintiffs.

The master further found as follows: From about April 1, 1927, to January 27, 1931, the plaintiffs were engaged in the ice business, in Malden, as partners under the firm name of Kelly and West, and did business in parts of Malden, Everett and Melrose. In April, 1927, the defendant John Jacobs (hereafter referred to as the defendant unless otherwise indicated), who had previously been in the employ of the plaintiff Kelly, continued in his employment for the partnership and thereafter worked for it at various times from about April of each year until October or early in November. He terminated this employment about the middle of October, 1930. On January 27, 1931, the plaintiffs, together with the wife of the plaintiff West, caused a corporation to be formed under the name of Kelly & West, Inc., which purchased the business of the partnership including its assets and good will. Fifty-nine per cent of the stock of the corporation was owned by West, one per cent by his wife and forty per cent by Kelly. These three stockholders are the directors of the corporation. The master also found that the contract of employment was not specifically assigned to the corporation; that the partners acting under the advice of counsel intentionally excluded it from the transfer and it did not pass to the corporation; that the plaintiffs devoted themselves entirely to the business of Kelly & West, Inc.; that as managers of the corporation it was their intention to employ the defendant again in the spring of 1931 in the manner in which he had been previously employed by the partnership; that as individuals they could not have furnished employment in the business to the defendant after the date of the formation of the corporation; that the territory covered by the places above mentioned consisted of ten routes and the defendant was employed on all of these routes.

The defendant Emma L. Jacobs is the wife of John Jacobs and a sister of the plaintiff Kelly. The master found that she knew of her husband's employment by the partnership but had no knowledge of his contract with the plaintiffs; that for the purpose of providing steady employment for her husband she used money she had earned to pur-

chase an automobile truck and had a body built for the same, and had the words "Standard Ice Company" printed on it; and that she had window cards printed for the ice business and had arranged for the purchase of ice at wholesale. In all these matters she used her own money, and upon the advice of counsel she had recorded in the office of the city clerk of Malden a "Married Woman's Certificate and Business Name Notice." The master found that she acted in good faith and is the owner of the business known as Standard Ice Company; that the plaintiffs had never in any capacity used this name in their business. The defendant entered the employ of his wife on or about April 10, 1931, in the ice business and solicited patronage on certain streets of routes in which he had formerly been employed by the partnership of Kelly and West.

The contract upon which the plaintiffs rely was a contract for personal services. No definite term for such employment was therein stated. It appears that after January 27, 1931, when the ice business was sold and transferred with all its assets to Kelly & West, Inc., the plaintiffs neither as individuals nor as members of the partnership had any legal title in the ice business; they neither owned nor carried on any ice business where the defendant could be employed. The corporation was not a party to the contract between the plaintiffs and the defendant and acquired no rights thereunder by reason of the transfer of the business and assets of the partnership to it. The fact that nearly all the corporation stock was owned by the plaintiffs and they managed the business of the corporation did not obligate the defendant to continue in the employ of the corporation. As ruled by the trial judge, the plaintiffs, by the sale and transfer of their business to the corporation and by entering into its management before the acts complained of were committed, "incapacitated themselves from performing their contract with the male defendant." It is plain that upon the facts found the plaintiffs' ownership of stock in the corporation did not entitle them to maintain the bill and the judge in substance so ruled.

The case in principle is governed by *Myott* v. *Greer*, 204 Mass. 389, where a bill was brought to restrain the defendant from carrying on an express business in violation of an agreement with the plaintiff. The following facts appeared: The defendant sold and conveyed to the plaintiff all the property used in his business "together with the good will of the business," and in the bill of sale covenanted that he would "not engage in the express . . . business in any form whatever, within twenty (20) miles of the town" where the business sold was located "for a period of ten years either directly or indirectly." The plaintiff, after carrying on the business for ten months, organized a corporation to which in consideration of capital stock issued to him he conveyed "the business assets, good will and personal property of every description belonging to . . . [him] and used or capable of being used in connection with the business." Thereafter the corporation mortgaged its tangible property, and later the mortgage was foreclosed and the corporation ceased to function. The plaintiff then resumed the express business on his own account. The defendant had been conducting an express business in violation of his covenant. In view of these facts it was said by Loring, J., at page 392: "The defendant's covenant which is the foundation of this suit is valid since it is attached to the good will sold by Greer to the plaintiff and by the plaintiff to the corporation . . . . The corporation is the owner of that good will, and it is the corporation only as the owner of that good will that has a right to enforce the covenant." See also *Marshall Engine Co.* v. *New Marshall Engine Co.* 203 Mass. 410, and cases cited.

It is earnestly argued by the plaintiff's counsel that the present case is governed by *C. H. Batchelder & Co. Inc.* v. *Batchelder*, 220 Mass. 42, where it was said by Braley, J., at page 44: "The purpose of the defendant as the founder and organizer of the corporation, over whose affairs as its president and treasurer he exercised unrestricted control until the receivership, was plainly to enable him to do business in corporate form. The findings of the judge leave no doubt that he treated the business as being essentially

the same as if it were his own. The corporation was his creature or instrumentality and in reality the business remained his personal business, which he transacted under the corporate name." The foregoing statements afford no basis for the plaintiffs' contention that the defendant in the case at bar was liable to the plaintiffs under the contract of employment after the plaintiffs had sold and transferred their ice business and assets to the corporation.

The plaintiffs have filed in this court a motion to the effect that, if it is held that the right to enforce the agreement passed to the corporation by operation of law, they may be allowed by this court to amend the bill by striking out the names of the plaintiffs and substituting therefor the following: "Lorimer T. West and Lawrence M. Kelly, both of Malden, in the County of Middlesex . . . for and in behalf of Kelly & West Inc., . . . or in such other manner as to this Court may seem meet and proper."

We are of opinion that this motion should not be allowed. West and Kelly in their own names have no right to bring an action in behalf of the corporation to enforce the agreement. If the corporation has any rights under the agreement, it can be enforced only by a proceeding brought directly in the name of the corporation. From the findings that the contract "was not specifically assigned to the corporation," "that said contract did not run to the 'successors or/and assigns' of the partnership," "that the partners, acting under the advice of counsel, intentionally excluded said contract from any part of the transfer, and that it did not pass to the corporation," it is manifest that the corporation had no rights under the contract to which it was not a party. It is unnecessary to decide whether the corporation would have obtained any interest in the contract, which was for personal services to be rendered by the defendant, even if it had been specifically assigned to the corporation. The circumstance that the plaintiffs own ninety-nine per cent of the capital stock and for that reason are personally interested in the enforcement of the contract presents no legal reason for the maintenance of the bill by them individually or by the corporation. It follows that if the amendment were

allowed the bill as amended could not be maintained for the reasons stated.

The cases of *Walker Coal & Ice Co.* v. *Westerman*, 263 Mass. 235, and *Walker Coal & Ice Co.* v. *Love*, 273 Mass. 564, are distinguishable in their facts from the present case.

We find no error in the manner with which the plaintiff's requests for rulings were dealt with by the presiding judge. The final decree is affirmed with costs of the appeal.

*Ordered accordingly.*